# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee


FILED
FEB 04 2019
Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 3:19-MJ-1008
A CELLPHONE, AS MORE FULLY DESCRIBED IN )
ATTACHMENT A, )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Eastern___ District of ___Tennessee___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841. | Possession with the Intent to Distribute a Controlled Substance |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael Geddings, DEA TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/28/19

_____
*Judge's signature*

City and state: Knoxville, Tennessee        DEBRA C. POPLIN, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

3:19-MJ-1008

FILED
FEB 04 2019
Clerk, U.S. District Court
Eastern District of Tennessee
At Knoxville

I, Michael Geddings, Task Force Officer for the Drug Enforcement Administration ("DEA"), being duly sworn, depose and state that:

## Introduction

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been an officer with the Knoxville Police Department (KPD) since November of 2002 and have been assigned to work narcotics investigations since April of 2007. I have also been deputized as a Task Force Officer (TFO) for the Drug Enforcement Administration (DEA) since April of 2014. I am currently assigned to the DEA Knoxville Resident Office.

3. I have experience and training in conducting investigations of criminal activity, including debriefing confidential sources about criminal activity, conducting surveillance of persons involved in criminal activity, and conducting searches for evidence of criminal activity. Such criminal activity includes trafficking in controlled substances. I have experience in assisting investigations utilizing Court-ordered wiretaps. I am familiar with the methods of operation and terminology used by persons involved in illegal drug distribution activities. In the performance of my duties as a DEA TFO, I have conducted investigations involving narcotics, drug trafficking, and other general criminal investigations since April of 2014 involving violations of state and federal laws. I have been involved in the detection and investigation of federal narcotics violations, including the sale, distribution, importation, possession, and conspiracy to possess or sell and distribute various narcotics and controlled substances and the use of communication facilities, such

as landline telephones, cellular telephones, and other like facilities that are commonly used to facilitate narcotics violations. I have received training in narcotics enforcement efforts, case development, procedures, investigative techniques, interdiction techniques, asset forfeiture investigations, and other standardized methods of investigation involving narcotics offenses from the Multijurisdictional Counterdrug Task Force, Institute of Police Technology and Management, Regional Counterdrug Training Academy, Tennessee Bureau of Investigation (TBI), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and the DEA. I have investigated violations of state and federal narcotics statutes since April of 2014 in the Eastern District of Tennessee (EDTN) and, as a result, have been successful in arrests and convictions of numerous individuals associated with narcotics distribution. As a result of these investigations and prosecutions, I am aware of various methods and techniques utilized by individuals within the EDTN and elsewhere involved in the sale and distribution of various controlled substances. I am familiar with various codes, slang terms, and other terminology utilized by drug traffickers to refer to controlled substances. I have kept myself abreast of various narcotics violators and have received intelligence regarding narcotics violations from agents of the DEA, TBI, the Federal Bureau of Investigation (FBI), and local law enforcement authorities located in the EDTN and surrounding states.

4. I am investigating Todji Kijuan Martin ("MARTIN"), who is suspected of possessing with the intent to distribute heroin, in violation of Title 21, United States Code, Section 841.

5. I am submitting this affidavit in support of an application for a warrant to search the following cellular telephone: A black and silver ZTE flip style cellular telephone utilizing telephone number 248-417-6344, IMEI # 990008873634294, presently stored in secure law enforcement facility located at 917 E. Fifth Avenue, Knoxville, TN 37917, as more fully described in Attachment A (hereinafter the "TARGET DEVICE").

2

6. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant authorizing the search of the TARGET DEVICE, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that the TARGET DEVICE contains evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841, as further described in Attachment B.

## Probable Cause

7. On January 27th, 2019 a Knoxville Police Department officer spotted a car driven by MARTIN speeding, going 65 mph in a 55 mph zone. That officer pulled the speeding car over and and approached the car to speak with the driver, MARTIN. MARTIN admitted to the officer that his license was suspended. The officer requested that MARTIN go sit in the backseat of his police cruiser while the officer worked on the situation. MARTIN was not handcuffed at that time, and the officer checked the backseat of his cruiser with a flashlight for any contraband before MARTIN sat inside. MARTIN was quickly frisked for weapons by the officer before he sat in the cruiser, who found none.

8. A K-9 was called to the scene and alerted on the car, but no drugs were found in the car, which was a rental car and not registered to MARTIN or his passenger. MARTIN was then handcuffed and taken to the police station. At the police station, in MARTIN's pockets, law enforcement found $1910 in various denominations.

9. Before the rental car was driven by law enforcement back to the police station, law enforcement found at least three cellphones inside the car. MARTIN, after waiving his Miranda rights, admitted that the TARGET DEVICE was his, along with two other cell phones.[1]

---

[1] We do not seek a warrant to search the other two phones owned by MARTIN because law enforcement believes those phones cannot be easily unlocked.

3

10. Because the K-9 alerted on the car driven by MARTIN, and because they had not discovered any drugs inside the vehicle, law enforcement checked the backseat of the police cruiser where MARTIN had been sitting and discovered 41 baggies containing a light brown substance stuffed beneath the seat in the back seat of the cruiser where MARTIN had been sitting before he was handcuffed and arrested. Based on my training and experience, the light brown substance appears to be heroin. Because of safety concerns for the testing officers, the suspected heroin was not field tested and will be tested in a laboratory. In total, the heroin weighed approximately 9.4 grams. During mid-summer of 2018, a confidential source recorded a buy of heroin from MARTIN. In November of 2018, MARTIN sent a text from the telephone number associated with the TARGET DEVICE to a confidential source informing the source he was using a new number.

11. Since their discovery on January 27th, 2019, the TARGET DEVICE has remained secure in law enforcement custody. Based on my training and experience I know that phones frequently retain much of their stored data for long periods of time, if not indefinitely.

12. As a result of my training and experience, I know that drug dealers utilize cellular phones to conduct their business. I am also aware that cellular telephones provide narcotics traffickers with mobile access and control over their illegal trade. They often utilize cellular telephones to communicate with one another in furtherance of their narcotic activities. I also know that narcotic traffickers routinely change the telephones that they use to avoid law enforcement detection, and frequently use and possess more than one telephone for the same reason. Often times, narcotics traffickers will use a specific phone to communicate with only one or a small number of contacts, thus limiting the awareness of that number to a small number of associates, and limiting their exposure if that telephone is subject to a wiretap by law enforcement.

4

13. As reference above, I know that cell phones frequently retain information for long periods of time, including retaining call histories, text messages, voicemail messages, photographs, internet history, GPS location, and other information that can be retrieved from the cell phone even long after the cell phone ceased to be used. If unused and unaltered, like the TARGET DEVICE in this case, data can remain indefinitely. Cell phones are best analyzed in an offsite environment where the appropriate equipment can be used to download the data off the phone and preserve a copy of the downloaded material for inspection.

## **Technical Terms**

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless

5

Case 3:19-mj-01008-DCP   Document 1   Filed 02/04/19   Page 6 of 16   PageID #: 6

telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by devices on the Internet. Every device attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some devices have static—that is, long-term—IP addresses, while other devices have dynamic—that is, frequently changed—IP addresses.

15. Based on my training, experience, and research, I know that cellular devices such as the TARGET DEVICE, even flip phones, may have capabilities that frequently include **acting as a wireless telephone, digital camera, GPS navigation device, and PDA.**[2] In my training and

---

[2] I did an internet search for the device in question, and I believe based on that research that this phone model likely has at least internet browsing capabilities and a camera, along with traditional capabilities including phone calls,

7

experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, evidence of a crime, or point toward the existence of evidence in other locations. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations.

### Electronic Storage and Forensic Analysis

16. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET DEVICE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

---

electronic messages, audio recordings, the ability to connect to Bluetooth devices and computers, among other features. I am not sure if this particular phone model has the ability to track the phone's location via GPS, but believe that many phones like it do have that capability.

8

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## Method of Retrieving Evidence

18. The nature of cellular phone-related evidence requires forensic analysts to employ a variety of different techniques to search for, document, and obtain electronic evidence. The search

9

procedure may include the following techniques (the following is a nonexclusive list, as other search procedures may be used):

    a. examination of all of the data contained in the cellular telephone, and/or memory storage devices in the cellular telephone to view the data and determine whether that data falls within the items to be seized as set forth herein;

    b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

    c. surveying various file directories and the individual files they contain;

    d. opening files in order to determine their contents;

    e. scanning storage areas;

    f. performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear.

19. Because this warrant seeks only permission to examine only the TARGET DEVICE, which is already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night. Furthermore because this is an ongoing investigation, I respectfully request that notification be delayed for 30 days to prevent the ongoing investigation from being known to any potential targets.

MICHAEL GEDDINGS, TFO
Drug Enforcement Administration

Sworn and subscribed before me on
January 28, 2019, in Knoxville, TN.

_____
DEBRA C. POPLIN
UNITED STATES MAGISTRATE JUDGE

## Attachment A

The property to be searched includes a black and silver ZTE flip style cellular telephone utilizing telephone number 248-417-6344, IMEI # 990008873634294, presently stored in a secure law enforcement facility located at 917 E. Fifth Avenue, Knoxville, TN 37917.

## Attachment B
*Items and Information to be Seized*

All records relating to violations of Title 21, United States Code, Section 841, from November 1, 2018 until January 28th, 2019 including:

1. Records of telephone calls placed, received, and missed;

2. Records of voice, text, data, or instant mail or messaging activity;

3. Records of photographs and video or audio recordings created, transmitted, viewed, or otherwise accessed using the phone;

4. Evidence of user attribution showing who used or owned the phone at the time the items were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

5. Records of contacts, including names, telephone numbers, addresses, and other identifying information stored on the phone, indicating potential co-conspirators, customers, suppliers, or accomplices;

6. Records of schedules or meetings, containing evidence of the identities of, or communications with, associates, or times, places, and attendees of meetings related to drug trafficking;

7. Records of Internet Protocol addresses used; and

8. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## Attachment A

The property to be searched includes a black and silver ZTE flip style cellular telephone utilizing telephone number 248-417-6344, IMEI # 990008873634294, presently stored in a secure law enforcement facility located at 917 E. Fifth Avenue, Knoxville, TN 37917.

## Attachment B
*Items and Information to be Seized*

All records relating to violations of Title 21, United States Code, Section 841, from November 1, 2018 until January 28th, 2019 including:

1. Records of telephone calls placed, received, and missed;

2. Records of voice, text, data, or instant mail or messaging activity;

3. Records of photographs and video or audio recordings created, transmitted, viewed, or otherwise accessed using the phone;

4. Evidence of user attribution showing who used or owned the phone at the time the items were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

5. Records of contacts, including names, telephone numbers, addresses, and other identifying information stored on the phone, indicating potential co-conspirators, customers, suppliers, or accomplices;

6. Records of schedules or meetings, containing evidence of the identities of, or communications with, associates, or times, places, and attendees of meetings related to drug trafficking;

7. Records of Internet Protocol addresses used; and

8. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.